NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JACQUELINE B., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, G.B., *Appellees.*

No. 1 CA-JV 21-0057
FILED 9-9-2021

Appeal from the Superior Court in Yuma County
No. S1400JD20190538
The Honorable R. Erin Farrar, Judge
The Honorable Kathryn Stocking-Tate, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Elizabeth M. Brown, Goodyear
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Chief Judge Kent E. Cattani joined.

---

**T H U M M A**, Judge:

**¶1** In this termination of parental rights proceeding, which began with a dependency petition filed in late 2019, counsel for Jacqueline B. (Mother) seeks to challenge the court's finding that the Department of Child Safety (DCS) properly served Mother by publication. Because counsel for Mother has shown no reversible error, the finding that Mother was properly served by publication is affirmed. As a result, the order terminating Mother's parental rights to her biological child G.B. is final.

## FACTS AND PROCEDURAL HISTORY

**¶2** DCS had contact with Mother beginning in November 2016, when in connection with the birth of another child, Mother admitted using methamphetamine while pregnant. In July 2017, after Mother failed to engage in services, her parental rights to that child were terminated.

**¶3** At G.B.'s birth in October 2019, both Mother and G.B. tested positive for amphetamines. When interviewed by DCS, Mother had no explanation for the positive tests; "could not provide a home address;" "did not know where she would be residing after discharge;" had no baby supplies and had no suggestions for safety plan members. Although Mother provided the father's name, she provided no contact information for him. When taking G.B. into care at the hospital, DCS gave Mother the names, phone numbers and an address for DCS representatives.

**¶4** DCS filed a dependency petition and personally served Mother in December 2019 where she was living in Wellton in Yuma County. Mother, however, failed to appear at any dependency or termination hearings. Nor has she participated in any services offered by DCS following G.B.'s birth. At an early January 2020 hearing, Mother's counsel advised the court that a letter she had sent to Mother was returned as undeliverable. At that same hearing, G.B. was found dependent as to Mother, after she failed

to appear without good cause. On motion of G.B.'s guardian ad litem, the court changed the case plan to severance and adoption.

¶5 DCS' January 2020 motion for termination alleged abandonment and chronic substance abuse by Mother, including use of methamphetamine. The court originally found service of the motion was made through Mother's attorney. However, the court later determined that the attorney had never been appointed to represent Mother in the termination, because Mother had never appeared in the termination proceedings. At an April 2020 hearing, the court vacated its finding that Mother had been served through counsel, indicated service by publication was appropriate and set an August 31, 2020 publication hearing. At the April 2020 hearing, the participants also discussed a report that Mother had been deported to Mexico.

¶6 The attorney appointed to represent Mother in the dependency proceeding was never appointed to represent Mother in the termination proceeding. That lack of appointment explained why service through counsel was not effective. But for reasons not apparent from the record, the attorney assigned (but never appointed) to represent Mother in the termination proceeding advocated on Mother's behalf throughout that proceeding.

¶7 On four consecutive weeks in May and June 2020, DCS published notice of the August 31, 2020 hearing in a Yuma County newspaper. DCS also provided information to the court and the parties about attempts to locate Mother. In July 2020, DCS provided: (1) an "Affidavit of Publication" (showing service by publication for the August 31, 2020 hearing); (2) a "Certificate of Non-Service" (recounting, under penalty of perjury, unsuccessful attempts to serve Mother at her Wellton residence, stating she no longer lived there); and (3) a "Declaration of Diligent Search and Unknown Residence." The Declaration stated, under penalty of perjury, that (a) Mother's current residence "is still unknown" and (b) "[a]fter researching the sources" attached (apparently including social media and "Mexico – Central Authority & practical information"), Mother had not been located. An August 2020 Affidavit of Service By Publication recounted much of this same information, adding that "[a] diligent investigation was conducted [to locate Mother], also without success;" that Mother's "whereabouts . . . remain unknown" and that a copy of the motion to terminate was mailed to Mother at her Wellton address but was returned as undeliverable in June 2020.

¶8            At the August 31, 2020 publication hearing, the court found that service by publication was appropriate because DCS made a diligent effort to locate Mother, but had been unsuccessful in doing so, and that service by publication was complete as to Mother. When DCS said it had not contacted the Mexican Consulate (given Mother's reported deportation), the court continued the hearing to November 2020 so that DCS could "do an international parent locate."

¶9            Before the November 2020 hearing, DCS provided a response from the Consul of Mexico in Tucson explaining that, without more information about Mother (including her place of birth in Mexico), "there is not sufficient material to expand our searching efforts." At the November 2020 hearing, DCS relayed information that Mother "was never deported." Instead, in early 2019, she was released from U.S. Immigration and Customs Enforcement (ICE) custody on bond and was on fugitive status after missing an ICE hearing in late 2019. DCS added that Mother's location was unknown, attempts to contact her on Facebook failed and that Mother never contacted DCS, even though she knew DCS had custody of G.B. As a result, DCS asked the court to find that it had undertaken diligent efforts to locate Mother. Counsel assigned to represent Mother objected, noting ICE provided more potential phone numbers for Mother and that Father's counsel had provided another Facebook profile for Mother. The court continued the hearing to late December 2020 to allow DCS to make additional efforts to try to locate Mother.

¶10            At the December 2020 hearing, DCS reported that the phone numbers ICE provided were not for Mother. Counsel for Father stated she had recently contacted a Facebook account asking if it was Mother's profile (but not mentioning the hearing), and the response received was that it was Mother's account. After recounting DCS' repeated efforts to contact Mother, over the objection of counsel assigned to represent Mother, the court found Mother was properly served by publication; that DCS had proven the grounds for severance and granted the motion terminating Mother's parental rights to G.B. Although objecting, counsel assigned to represent Mother did not indicate that she knew where Mother was located or how Mother could be contacted. That same attorney then filed a notice of appeal to this court.

## DISCUSSION

**¶11**        Recognizing this court has an independent obligation to assess jurisdiction, *Jessicah C. v. Dep't of Child Safety*, 248 Ariz. 203, 205 ¶ 8 (App. 2020), it is unclear whether Mother has properly invoked this court's appellate jurisdiction. Although the attorney assigned to represent Mother purported to file a notice of appeal, as noted above, the record does not show that attorney was ever appointed to represent Mother in the termination proceedings. Nor did Mother, who has never appeared in the termination proceedings, file a notice of appeal on her own behalf. It therefore appears that no proper, timely appeal has been filed by or on behalf of Mother, suggesting this court lacks appellate jurisdiction. *See* Ariz. R.P. Juv. Ct. 104(B) (2021).[1] Even if this court has appellate jurisdiction, however, Mother has shown no error in the finding that DCS properly served Mother by publication.

**¶12**        Conceding service by publication is governed by Ariz. R. Civ. P. 4.1(1), Mother argues "DCS did not make reasonably diligent efforts to find Mother's current address, and DCS did not explain why service by publication was the best means by which to give Mother notice of the Motion." But assigned counsel for Mother never proffered to the superior court an address or contact information for Mother while the termination motion was pending. Nor did assigned counsel ever represent to the court that she had been in contact with Mother. Accordingly, Mother's arguments regarding lack of due diligence by DCS are unpersuasive.

**¶13**        As applicable here, service by publication is proper if (1) DCS, "despite reasonably diligent efforts, has been unable to ascertain the person's current address" and (2) "service by publication is the best means practicable in the circumstances for providing the person with notice." Ariz. R. Civ. P. 4.1(l). On the record provided, the court did not err in finding DCS made these required showings.

**¶14**        Historically, "reasonably diligent efforts" require searching publicly-available information to seek to identify the location of an individual. *Sprang v. Petersen Lumber, Inc.*, 165 Ariz. 257, 261 (App. 1990) (citing *Preston v. Denkins*, 94 Ariz. 214, 222–23 (1963) and *Omega II Investment Co. v. McLeod*, 153 Ariz. 341, 342 (App. 1987)). More recently, "reasonably diligent efforts" also includes attempting to make contact via electronic means. *Ruffino v. Lokosky*, 245 Ariz. 165, 169 ¶ 14 (App. 2018). This

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

obligation does not, however, require a party to search "every channel possible" before service by publication may be proper. *Id.* at 170 ¶ 18.

¶15　　　　Contrary to the arguments Mother advances, the record supports the court's finding that DCS undertook "reasonably diligent efforts" to locate Mother that failed. DCS called the phone number Mother gave in the hospital after G.B.'s birth, without success. For months, DCS conducted parent locates, searched state and federal databases, court records, ICE deportation records and messaged Mother on what appeared to be her social media account, all without success. Although DCS may not have searched every channel possible, it was not required to do so to show "reasonably diligent efforts." *Id.* at 169 ¶ 14. Mother has not shown that her contact information was readily available or that the court erred in finding DCS made reasonably diligent efforts to locate her. Nor has Mother shown that, as a result of these reasonably diligent efforts, the court erred in finding that service by publication was the best means practicable in the circumstances. Ariz. R. Civ. P. 4.1(l).

¶16　　　　To the extent Mother argues a finding of due diligence was required *before* service by publication could begin, she places form over substance. The DCS effort to find Mother was ongoing until the December 2020 hearing. Ultimately, those efforts -- taken by DCS over many months -- failed to produce contact information for Mother.

¶17　　　　To the extent that Mother relies on language in *Sprang* to support her argument, in context, that case stands for a different proposition. *Sprang* stated that "[a] finding of due diligence prior to service by publication is a jurisdictional prerequisite." 165 Ariz. at 262. It did so, however, in affirming a decision to set aside a default judgment, not in delineating the procedure required for service by publication. *Id.* (noting court "properly set aside the default judgment"). But as noted in the primary authority cited by *Sprang*, it is the information in the sworn statement supporting service by publication that provide the basis for jurisdiction, not whether a finding of due diligence precedes service by publication. *Preston v. Denkins*, 94 Ariz. 214, 223 (1963) ("The jurisdiction of the court to enter any judgment must rest on the affidavit in support of service by publication.").

¶18 Finally, although Mother challenges the affidavits and other information provided by DCS, she has shown no error by the court in considering those affidavits. Given the substantial efforts undertaken by DCS, over many months, she has not shown that DCS failed to comply with Rule 4.1(1) authorizing service by publication. Finally, because Mother has shown no error in the court's findings that Mother was properly served by publication, this court need not address DCS' arguments that any error was invited by Mother. *State v. Kemp*, 185 Ariz. 52, 60 (App. 1996) (noting, under doctrine of invited error, "a party cannot complain about a result he [or she] caused").

## CONCLUSION

¶19 The superior court's finding that Mother was properly served by publication is affirmed and the order terminating Mother's parental rights to her biological child G.B. is final.



AMY M. WOOD • Clerk of the Court
FILED:    AA